William B. Sullivan [CSB 171637]
helen@sullivanlawgroupapc.com
Eric K. Yaeckel [CSB 274608]
yaeckel@sullivanlawgroupapc.com
Clint S. Engleson [CSB No. 282153]
cengleson@sullivanlawgroupapc.com
**SULLIVAN LAW GROUP, APC**
2330 Third Avenue
San Diego, California 92101
(619) 702-6760 * (619) 702-6761 FAX

Attorneys for Plaintiff ELENA SELK,
individually and on behalf of other members
of the general public similarly situated

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA SELK, individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PIONEERS MEMORIAL HEALTHCARE DISTRICT, a business entity, form unknown, and DOES 1-50, inclusive<br><br>Defendants | **CASE NO. 13-CV-00244-BAS-BGS**<br><br>**(COLLECTIVE ACTION)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF (1) FLSA SETTLEMENT; (2) ATTORNEYS' FEES AND COSTS; and (3) ENHANCEMENT AWARD**<br><br>Date:   August 17, 2015<br>Crtrm:   4B<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# **TABLE OF CONTENTS**

I.   Summary of Motion.....................................................................................1

II.  Background..................................................................................................1

   A.   Factual Background...........................................................................1

   B.   Procedural Background.....................................................................1

   C.   The Parties' Discovery Efforts During Litigation ...........................3

   D.   Notice Provision To, And Claims Made By, Class Members.........3

   E.   Proposed Settlement of the Class Action.........................................4

III. Summary of Settlement Terms.....................................................................4

   A.   Settlement Fund and Allocation.......................................................4

   B.   Attorneys' Fees and Costs................................................................5

   C.   Associated Employer Tax Liability..................................................6

   D.   Service and Other Payments.............................................................6

   E.   No Third Party Settlement Administrator.........................................6

   F.   Settlement Administration.................................................................6

      1.   Class Employment Data.........................................................6

      2.   Settlement Calculations..........................................................7

      3.   Check Processing....................................................................7

      4.   Notice Process........................................................................7

      5.   Additional Duties of Counsel for Parties Plaintiff................7

      6.   Release of Class Members' Claims........................................7

IV.  Standard of Review......................................................................................8

V.   Approval of the Settlement Is Appropriate..................................................9

   A.   The Settlement Is Presumptively Fair and Reasonable....................9

   B.   The Strength of Plaintiffs' Case.....................................................10

   C.   The Stage of Litigation and Discovery Completed.........................11

   D.   The Risk, Expense, Complexity and Likely Duration of Further Litigation.......................................................................................12

E.  The Experience and Views of Counsel..........................................................13

VI.  Plaintiff's Enhancement Award Is Appropriate......................................................14

VII.  Plaintiff's Request for Fees and Costs Is Appropriate.........................................14

A.  Plaintiffs Are Entitled to Recover Reasonable Fees and Costs....................14

B.  Lodestar Approach Should Be Used to Determine Fees..............................15

C.  Plaintiffs Request For Fees and Costs Is Reasonable..................................16

VIII.  Conclusion.............................................................................................................17

TABLE OF CONTENTS/TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

## CASES

*Almodova v. City and County of Honolulu*
  No. 10-00355, 2012 WL 3255140, *3 (D. Hawaii Aug. 8, 2012)............................8

*Alyeska Pipeline v. Wilderness Society*
  421 U.S. 240 fn. 34 (1975).................................................................................14

*Ballaris v. Wacker Siltronic Corporation*
  370 F. 3d 901 (9th Cir. 2004)............................................................................11

*Barcia v. Contain-A-Way, Inc.*
  No. 07CV938-IEG-JMA, 2009 WL 587844, at *7 (S.D. Cal. Mar. 6, 2009)........14

*Barrios v. California Interscholastic Federation*
  277 F. 3d 1128 (9th Cir. 2002)...........................................................................15

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*
  532 U.S. 598 (2001)............................................................................................15

Costa v. Commissioner of Social Sec. Admin.
  690 F. 3d 1132 (9th Cir. 2012)...........................................................................15

*Gillings v. Time Warner Cable, LLC*
  583 Fed. Appx. 712 (9th Cir. 2014)................................................................10,11

*Hanlon v. Chrysler Corp.*
  150 F. 3d 1011 (9th Cir. 1998).............................................................................8,9

*Lynn's Food Stores, Inc. v. United States*
  679 F. 2d 1350 (11th Cir. 1982)............................................................................8

*P.N. v. Seattle School Dist. No. 1*
  474 F. 3d 1165 (9th Cir. 2007)...........................................................................15

*See's Candy Shops Inc. v. Sup. Ct.*
  210 Cal.App.4th 889 (2012).............................................................................10,11

*Tex.State Teachers Ass'n v. Garland Indep. Sch. Dist.*
  489 U.S. 782 (1989)............................................................................................14

*Torrisi v. Tucson Electric Power Co.*
  8 F. 3d 1370 (9th Cir. 1993)..................................................................................8

*Trinh v. JP Morgan Chase & Co*
  No. 07-CV-01666, 2009 WL532556, *1 (S.D. Cal. Mar 03, 2009)....................8,9

*Van Vranken v. Atlantic Richfield Co.*
  901 F. Supp. 294 (N.D. Cal. 1995)......................................................................14

*Vasquez v. Coast Valley Roofing, Inc.*
  266 FRD 482 (E.D. Cal. 2010)...............................................................................9

*Yue Zhou v. Wang's Restaurant*
No. C 05-0279 PVT, 2007 WL 2298046, 1 (N.D. Cal Aug. 8, 2007)...................14

**FEDERAL STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure 23..........................................................................2,3,9,11

Federal Rule of Civil Procedure 56................................................................................2

19 USC § 201 *et seq*......................................................................................................1

29 USC § 216(b).............................................................................................................14

29 CFR § 778.109...........................................................................................................11


**STATE STATUTES, RULES AND REGULATIONS**

Bus. & Prof. Code § 17200............................................................................................1

California Civil Code § 1542 .........................................................................................13

TABLE OF CONTENTS/TABLE OF AUTHORITIES

# I. <u>SUMMARY OF MOTION</u>

This litigation is a "Wage and Hour" matter, in which conditional certification has been granted by the Court as to two classes. Following extensive settlement negotiations, the parties seek Court approval of the following: (1) a Settlement of all FLSA claims, (2) an award of Attorneys Fees and Costs,(3) an enhancement award to Plaintiff ELENA SELK (hereinafter "SELK" or "Plaintiff"), and (4) a full and complete settlement by SELK of any and all claims, including a general release.

Respectfully, Good Cause exists to grant the Motion. Both parties seek approval. All potential Class Members have previously been informed of this matter, and all Members who chose to "Opt-In" to the matter will receive a monetary payment. The final resolution of this matter (including a dismissal, with prejudice) will avoid further fees and costs, and allow for a greater recovery to the Class Members.

# II. <u>BACKGROUND</u>

## A.    FACTUAL BACKGROUND

Plaintiff ELENA SELK worked for Defendant PIONEERS MEMORIAL HEALTHCARE DISTRICT, a local health care district, erroneously sued as a business entity, form unknown (hereinafter "Defendant") for approximately 4 years, from December 2007 to February 2012.

## B.    PROCEDURAL BACKGROUND

Ms. SELK filed her Complaint in this matter on January 31, 2013. On October 31, 2013, Ms. SELK filed her operative Second Amended Complaint ("SAC"). The SAC alleged violations of the Fair Labor Standards Act ("FSLA"), codified at 19 U.S.C. section 201 *et seq.*, and California's Unfair Competition Law ("UCL"), codified at Business and Professions Code section 17200 *et seq.*

Specifically, Ms. SELK alleged that Defendant PIONEERS: failed to pay its nonexempt employees all overtime wages earned due to alleged improper calculations of the regular rate of pay for (A) shift pay; (B) meal discounts; and (C) all clocked time; and failed to maintain accurate wage records.   (Doc. # 48 at ¶¶ 29-32.)

Defendant PIONEERS denied SELK's allegations set forth in her operative Second Amended Complaint.   (Doc. # 51 at ¶¶ 29-32.)

On August 25, 2013, Defendant filed a Motion for Partial Judgment on the Pleadings in response to Ms. SELK's First Amended Complaint. (Doc. #25.)  Defendant's Motion was premised on the theory that, as a public entity, it was immune from Ms. SELK's UCL cause of action. (*Id*.) The Court denied Defendant's Motion on October 22, 2013 (Doc. #49.)

On January 8, 2014, Ms. SELK filed her Motion for Class and Conditional Certification in this matter pursuant to both Rule 23 and the FLSA. (Doc. #59.) Ms. SELK sought certification of four subclasses:  **(1)** an "overtime" class, based on Defendant's practice of altering work time to the nearest 15-minute increment; **(2)** a "cafeteria discount" class, based on Defendant's failure to incorporate the value of nonexempt employees' cafeteria discounts into the regular rate of pay for overtime purposes; **(3)** the "other computer records" class, based on uncompensated work time documented in computer records other than Defendant's timekeeping software; and **(4)** a UCL class, based on the foregoing alleged violations. Ms. SELK's move for certification under Rule 23, as opposed to the FLSA only, was premised on the applicability of the UCL to Defendant.

On February 19, 2014, Defendant brought a Motion for Partial Summary Judgment pursuant to Rule 56.  (Doc. #76.) The Motion sought dismissal of Ms. SELK's UCL cause of action based on the theory that, as a public entity, it was immune from suit under the UCL.  On April 7, 2014, the Court granted Defendant's Motion. (Doc. #92.)

On April 22, 2014, the Court granted in part and denied in part Ms. SELK's Motion for Class and Conditional Certification. (Doc. #96.)  Specifically, the Court granted FLSA conditional certification of Ms. SELK's "overtime" and "cafeteria discount" classes while denying certification of her "other computer records" class.

On May 8, 2014, the Court granted the parties' joint stipulation requesting modification of (Doc. # 96.)  Because the FLSA mandates "opt-in" procedures, the Court modified its reference to a Rule 23 "opt out" class action and ordered the parties to follow

- 2 -                    13-CV-00244-BAS-BGS

1   FLSA "opt in" procedures.   (Doc. # 102.)

2   **C.      THE PARTIES' DISCOVERY EFFORTS DURING LITIGATION**

3   Ms. SELK has propounded eight sets of written discovery requests on Defendant and

4   taken the deposition of Defendant's person most knowledgeable ("PMK") regarding

5   employee compensation. (Sullivan decl. ¶ 6.)  Defendant PIONEERS propounded eight

6   sets of written discovery requests to Ms. SELK. (*Id.*)

7   Defendant also took Ms. SELK's deposition on December 4, 2013, and the

8   deposition of Ms. SELK's expert, Dr. Robert Fountain, on January 29, 2014. (Sullivan

9   decl. ¶ 7.)

10   The parties resolved several discovery disputes through, *inter alia*, the dissemination

11   of a *Pioneer* Notice to putative class members and productions of redacted samplings of

12   putative class members' time and wage records, along with various computer records

13   related to Ms. SELK's claims for uncompensated work time. (Sullivan decl. ¶ 8.)

14   Defendant has also produced over 23,400 pages of documents, including employee

15   manuals and hospital-wide guidelines, Ms. SELK's time and wage records, and the time

16   and wage records of the opt-in plaintiffs. (Sullivan decl. ¶ 9.)

17   Through this production, counsel for both parties investigated and assessed potential

18   damages based on Ms. SELK's claims for unpaid overtime due to Defendant's "rounding"

19   practice and alleged failure to incorporate the value of discounted cafeteria meals into

20   employees' regular rates of pay. (Sullivan decl. ¶ 10.)

21   **D.      NOTICE PROVISION TO, AND CLAIMS MADE BY, CLASS MEMBERS**

22   On May 8, 2014, following a joint statement by the parties, the Court revised its

23   Certification Order to reflect that, following dismissal of Ms. SELK's UCL cause of action,

24   Rule 23 certification of the "overtime" and "cafeteria discount" classes was inappropriate.

25   (Doc. #102.)  The Court also stated that conditional certification of these two classes

26   pursuant to the FLSA remained appropriate and ordered notice be disseminated to potential

27   class members.

28   On June 13, 2014, following a dispute between the parties regarding the scope of

- 3 -                     13-CV-00244-BAS-BGS

notice to be disseminated to potential class members, the Court ruled that a "potentially overinclusive" notice was to be disseminated to all nonexempt employees who had worked for Defendant for the period beginning three years prior to the date the Complaint was filed to present. (Doc. #110.)

Notice was disseminated to 1,065 putative class members, 65 of whom opted in to the litigation.

On December 1, 2014, Plaintiffs' counsel filed 65 opt-in forms signed by members of the putative class who wished to join this litigation. (Doc. #113.)

**E.      PROPOSED SETTLEMENT OF THE CLASS ACTION**

In March 2015, the parties reached the tentative terms for a settlement agreement and notified the Court accordingly. (Doc. #121.)

### III.  <u>SUMMARY OF SETTLEMENT TERMS</u>

The Settlement Agreement (attached as **Exhibit A** to the Sullivan Declaration) sets forth the terms of the proposed settlement in greater detail. The settlement provides that Defendant will pay an amount not to exceed $50,000.00, inclusive of service payments and attorneys' fees and costs, to settle the claims of the 65 opt-in plaintiffs and Ms. SELK (collectively, the "Parties Plaintiff"). The key provisions of the settlement include:

**A.      SETTLEMENT FUND AND ALLOCATION**

Defendant agrees to pay an amount not to exceed Fifty Thousand Dollars ($50,000.00) (the "Settlement Fund") to resolve the Released Claims of the Parties Plaintiff. (**Ex. A**, ¶ C.) All payments to and on behalf of Parties Plaintiff, the Selk Service Payment (as defined below), the Selk Release payment (as also defined below), associated employee tax liability, and attorneys' fees and costs will be paid from this Settlement Fund. (*Id.*) Under no condition will Defendant's total liability, including payments to Parties Plaintiff and Counsel for Parties Plaintiff exceed Fifty Thousand Dollars ($50,000.00) under the terms of the Settlement Agreement. (*Id.*)

After the Settlement Fund is reduced by attorneys' fees and costs, the Selk Service Payment, and the Selk Release Payment, then the Net Settlement Fund to the collective not

to exceed Seventeen Thousand Five Hundred Dollars ($17,500.00) shall be distributed as follows:

First, there are Sixty-Six (66) Parties Plaintiff (SELK, plus 65 opt-in plaintiffs) who have opted-in to the Rounding Claim (Doc. #113). Each will receive the sum of $0.95 for each workweek actively worked for Defendant during the period January 31, 2010, through November 30, 2011; and each will receive the sum of $1.90 for each workweek actively worked for Defendant during the period December 1, 2011, through December 1, 2014. (**Ex. A**, ¶ C.) These Sixty-Six Parties Plaintiff and the calculation of the above for each are listed on Exhibit 3 to the Settlement Agreement.

Second, there are Fifty-Eight (58) Parties Plaintiff (SELK, plus 57 opt-in plaintiffs) who have opted-in to the Cafeteria Discount Claim (Doc. #113). Each will receive the sum of $0.18 for each workweek actively worked for Defendant during the period January 31, 2010, through November 30, 2011; and each will receive the sum of $0.36 for each workweek actively worked for Defendant during the period December 1, 2011, through December 1, 2014. (**Ex. A**, ¶ C.) These Fifty-Eight Parties Plaintiff and the calculation of the above for each are listed on Exhibit 4 to the Settlement Agreement.

However, each of the Parties Plaintiff will receive the greater of either (a) $150.00 (the "Minimum Payment"), or (b) each Party Plaintiff's Settlement Calculation. This amount is referred to as the "Individual Settlement Payment." (**Ex. A**, ¶ C.) The Individual Settlement Payment for each of these Sixty-Six (66) Parties Plaintiff is listed on Exhibit 5 to the Settlement Agreement.

In the event the Net Settlement Payment were to exceed $17,500, then any such excess amount would have been deducted from the amount to be paid to Counsel for Parties Plaintiff. (**Ex. A**, ¶ C.)

**B.    ATTORNEYS' FEES AND COSTS**

Counsel for Parties Plaintiff will receive Twenty-Two Thousand Dollars ($22,000.00) representing attorneys' fees **and** costs, to be distributed from the Settlement Fund.(**Ex. A**, ¶ D.)

## C.   ASSOCIATED EMPLOYER TAX LIABILITY

Defendant will pay all employer-funded payroll tax payments to governmental authorities and said sum shall not be included in the Settlement Fund. (**Ex. A**, ¶ E.) However, employee payroll withholdings are within the Settlement Fund, as the Individual Settlement Payments shall each be treated as wages and subjected to the regular payroll practice of Defendant. (*Id.*)

## D.   SERVICE AND OTHER PAYMENTS

Ms. SELK will receive a service payment of Five Thousand Dollars ($5,000.00) as compensation for bringing and prosecuting this action on behalf of herself and others, including numerous conferences with her counsel and including sitting for deposition ("Selk Service Payment"). (**Ex. A**, ¶ F.)  In addition, Ms. SELK will receive a payment of Five Thousand Five Hundred Dollars ($5,500.00) in consideration for her signing a full and complete settlement agreement and release of claims ("Selk Release Payment"). (*Id.*) A copy of the Elena Selk Settlement Agreement is attached to the Settlement Agreement as Exhibit 6.

## E.   NO THIRD PARTY SETTLEMENT ADMINISTRATOR

The Parties agree that the nature and amount(s) of this settlement do not necessitate the need for a Third Party Settlement Administrator. (**Ex. A**, ¶ G.) Defendant and Counsel for Party Plaintiffs will handle the payment of all payments required herein in accordance with the procedure set forth below, and report on its actions accordingly to all Counsel and the Court. (*Id.*)

## F.   SETTLEMENT ADMINISTRATION

The Parties agree to the following procedure for Settlement Administration:

**1.   Class Employment Data:** Within twenty (20) business days of the Court's entry of an Order granting approval of the settlement and entering final judgment dismissing the case with prejudice ("Dismissal Order"), Defendant shall provide Counsel for Party Plaintiffs the following information: (a) the name, last known address and telephone number of all Parties Plaintiff; (b) the start date and end of employment date for

- 6 -                          13-CV-00244-BAS-BGS

each Party Plaintiff for the period such Party Plaintiff worked as a non-exempt employee Defendant; (c) the number of active work weeks recorded by each Party Plaintiff for each of the two periods in issue during the applicable Statute of Limitations Period; (d) any additional agreed-upon information necessary to perform settlement calculations as provided in this Agreement; and (e) Defendant's calculation of the Individual Settlement Payment to each Party Plaintiff ("Class Employment Data"). (**Ex. A**, ¶ H(1).)

2. **Settlement Calculations:** Within ten (10) business days of the date that Defendant provides the Class Employment Data to Counsel for Parties Plaintiff, said Counsel shall review the data and advise Defendant's Counsel of any further information needed, or any contesting of the Individual Settlement Payment to any Party Plaintiff. (**Ex. A**, ¶ H(2).) If this designated time period passes with no inquiry or contest by Counsel for Parties Plaintiff, the calculation of the Individual Settlement Payment to each Party Plaintiff by Defendant shall be regarded, for all purposes, as accurate and the Parties may proceed to act upon such information in order to finalize the Agreement. (*Id*.) If an inquiry or contest by Counsel for Parties Plaintiff is timely presented, the Parties shall have ten (10) business days to resolve the issue. (*Id*.)  Should the Parties not be able to resolve the issue, it shall be promptly submitted to Magistrate Judge Bernard Skomal for decision. (*Id*.)

3. **Check Processing:** Within thirty (30) days of final approval by counsel for the Parties of the Settlement Calculations, Defendant shall process, produce and provide all settlement checks to Counsel for Parties Plaintiff.  (**Ex. A**, ¶ H(3).)

4. **Notice Process:** Within ten (10) business days of receipt of the settlement checks, Counsel for Parties Plaintiff shall issue the Settlement Notice and settlement checks to all Parties Plaintiff. (**Ex. A**, ¶ H(4).)

5. **Additional Duties of Counsel for Parties Plaintiff:**  Counsel for Parties Plaintiff shall provide regular, periodic updates in writing to Defendant regarding the distribution of the settlement payments. (**Ex. A**, ¶ H(5).)

6. **Release of Class Members' Claims:** Upon entry of the Dismissal Order, the Named Plaintiff and each Party Plaintiff shall be deemed to have, and by operation of the

Dismissal Order shall have, released, waived, and discharged the Released Parties from his or her Released Claims as defined herein. (**Ex. A**, ¶ K.)

"Released Parties" means Pioneers Memorial Healthcare District, its present and former officers, directors, employees, agents, attorneys, insurers, successors, predecessors, fiduciaries, administrators, and assigns, and any individual or entity which could be jointly or severally liable with Defendant. (**Ex. A**, ¶ B(9).)

"Released Claims" means any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney's fees, damages, actions, or causes of action for or which relate to the alleged failure to properly pay wages or overtime as required by the Fair Labor Standards Act, any state wage laws, any local wage laws, any other applicable federal, state or local law, and any other claims alleged in the case, including, *inter alia*, all claims for restitution and other equitable relief, liquidated damages, punitive damages, penalties of any nature whatsoever, retirement or deferred compensation benefits claimed on account of unpaid or improperly paid wages, salary, overtime, attorneys' fees and costs, during any and all applicable statute of limitations periods arising from employment by Defendant. (**Ex. A**, ¶ B(10).)

## IV.  **STANDARD OF REVIEW**

The prevailing view amongst courts in this Circuit is that settlement of FLSA claims requires the approval of either the Secretary of Labor or the district court. *Trinh v. JPMorgan Chase & Co.*, No. 07-CV-01666, 2009 WL 532556, *1 (S.D.Cal. Mar 03, 2009) (citing: *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1353 (11th Cir. 1982). To approve an FLSA settlement, the Court must determine that the settlement is a fair and reasonable compromise over disputed issues such as FLSA coverage or computation of back wages. *See, Lynn's Food Stores, Inc.*, 679 F. 2d at 1353.

As the FLSA is silent regarding the standard by which a proposed settlement is to be evaluated, Courts in this Circuit have looked to the factors applied to evaluate Rule 23 class action settlements as indicia that the settlement is fair. *Trinh*, 2009 WL 532556 at *1; *Almodova v City and County of Honolulu*, No. 10-00355, 2012 WL 3255140, *3 (D.

- 8 -                                13-CV-00244-BAS-BGS

Hawaii Aug. 8, 2012). These factors include (a) the strength of plaintiffs' case; (b) the extent of the discovery completed and the stage of the proceedings; (c) the expense, complexity, and duration of further litigation; and (d) and the experience and views of plaintiffs' counsel. *Trinh*, 2009 WL 532556 at *1 citing *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). While the Rule 23 class factors are helpful in determining fairness, the Court is not required to exercise the same scrutiny applied to a Rule 23 settlement because there are no passive plaintiffs in cases, such as this one, that have received conditional certification. *See*, *Trinh*, 2009 WL 532556 at *1.

## V. APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A. THE SETTLEMENT IS PRESUMPTIVELY FAIR AND REASONABLE

Courts in the Ninth Circuit will presume a settlement is fair where, as here, the following factors are met: (1) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (2) the settlement is reached through arm's-length bargaining; and (3) counsel is experienced in similar litigation. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("A settlement following sufficient discovery and genuine arms-length negotiations is presumed fair").

Here, the Parties litigated this case for over two years before reaching the terms of the proposed Settlement Agreement. This litigation encompassed, *inter alia*, three depositions, the exchange of thousands of pages of documents, sixteen sets of written discovery requests propounded by Ms. SELK and Defendant PIONEERS, numerous discovery motions, opinions by experts, a motion to file a second amended complaint, a motion for judgment on the pleadings, a motion for partial summary judgment, and a motion for class and conditional certification, which was granted in part.

Perhaps most significantly, following conditional certification of the two classes at issue, Defendant produced the time and wage records of the opt-in plaintiffs, thus allowing both Parties to assess potential damages on the remaining two, finite overtime claims. Thus, this case has been narrowed, over two years of litigation, to the overtime claims of 66

- 9 -                    13-CV-00244-BAS-BGS

individuals.  Counsel for both Parties have had an opportunity to investigate these individuals' claims through the exchange of formal discovery and have reached a settlement agreement based on this investigation.

Additionally, settlement negotiations remained at all times adversarial. Counsel for the Parties were in fact in the midst of a discovery dispute when a settlement agreement was achieved. (Doc. #120.) Settlement negotiations were informed by damages calculations based on the opt-in plaintiffs' time and wage records. (Sullivan decl. ¶ 13.) The Parties also took into account the potential for decertification of the two classes and a rapidly-approaching trial date. (*Id*.)

Finally, as set forth more fully below, counsel for both parties have significant experience in wage and hour class action litigation and consider the Settlement Agreement to be fair, adequate, and reasonable. (Sullivan decl. ¶¶ 3-5.)

## B.     THE STRENGTH OF PLAINTIFFS' CASE

Following conditional certification of the "overtime" and "meal period discount" classes, Ms. SELK's case is narrowly focused on these two issues as they pertain to the 66 Parties Plaintiff.  As set forth below, both issues face uncertainty at trial.

The parties agree that Defendant's time-keeping system impacts the time for which employees are paid by 'rounding' punches in and out to the nearest 15 minutes. They disagree on whether this practice is lawful. Case law on this issue is sparse and contemporaneously evolving. The California Court of Appeal has held that rounding is lawful when "neutral, both facially and as applied," over time. *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 903. However, what the Court of Appeal meant by "over time" remains a contested issue. *Id*. at fn. 7 (declining to address the issue of whether the rounding policy in question was neutral "over time"). The *See's* Court also left open the question–central to this litigation–of whether failing to account for the differences in overtime rates of pay versus regular time rates of pay could render a rounding practice unlawful:

We agree that California's overtime rules may mean that under a nearest-

- 10 -                         13-CV-00244-BAS-BGS

tenth rounding policy, an employee will not be fully compensated for the premium time if an employee works more than eight hours in one day. However, the issue whether this will result in undercompensation *over time* is a factual one. *Id.* at 912 (italics original).

Additionally, while this case was pending, the Ninth Circuit issued its unpublished decision in *Gillings v. Time Warner Cable LLC* (9th Cir. 2014) 583 Fed.Appx. 712. *Gillings* stands for the proposition that, where employees lose compensation due to their employers' rounding practices, such rounding practices cannot be "neutral in effect," as to those employees:

> The district court rejected the employees' claim that Time Warner's policy of rounding its employees' time to the nearest quarter hour systematically undercompensated them, reasoning that the policy was neutral on its face and as applied. See *See's Candy*, 210 Cal. App. 4th at 903. The record indicates, however, that Time Warner failed to credit Gillings and Bond with work that they had actually performed. Moreover, **even if considered in the aggregate, the record at this point indicates that the net impact for all four employees is to pay them for considerably fewer hours than they actually worked. Summary judgment on Gillings' and Bond's claims was thus <u>improper, because Time Warner's rounding policy appears not to have been neutral in its effect, either on them or in the aggregate</u>**. *Id.* at 715.

However, *Gillings*, like *See's*, addresses rounding in the summary judgment context and will, at best, provide guidance at the Parties' trial.

Similarly, there is a dearth of case law addressing the 10 percent "cafeteria discount" claim at issue.  Citing *Ballaris v. Wacker Siltronic Corporation*, 370 F. 3d 901 (9th Cir. 2004), Defendant has argued that the value of cafeteria discounts need not be incorporated into the regular rate of pay because such a discount does not compensate employees for hours worked.  Counsel for Parties Plaintiff counters that the plain language of 29 C.F.R. 778.109 requires *all* remuneration to be factored into the applicable regular rate of pay and that no such exception applies.  Regardless, counsel for Parties Plaintiff recognize that losses due to alleged failures to incorporate the value of cafeteria discounts into the regular rate of pay are minimal.  (Sullivan decl. ¶ 12.)

## C.   THE STAGE OF LITIGATION AND DISCOVERY COMPLETED

The Parties reached the terms of the proposed Settlement Agreement only a few months before their trial date and after over two years of litigation. (Doc. #117.) There are over 120 docket entries in this case, evidencing substantial motion work by both parties

- 11 -                              13-CV-00244-BAS-BGS

and an adversarial tone to the litigation.

To confirm, Defendant successfully brought a motion for partial summary judgment, which eliminated the possibility of Rule 23 certification and limited the statute of limitations to a maximum of three years. (Doc. #92.)   Defendant contends that the statute of limitations is two years under FLSA.   Ms. SELK then succeeded on conditionally certifying two of the classes at issue, after which 65 individuals (of 1,065) opted in to the litigation. (Doc. # 96, 102.)

Moreover, Ms. SELK propounded eight sets of written discovery requests on Defendant and took the deposition of Defendant's PMK regarding employee compensation. (Sullivan decl. ¶ 6.)

Defendant also took Ms. SELK's deposition on December 4, 2013, as well as the deposition of Ms. SELK's expert, Dr. Robert Fountain, on January 29, 2014. (Sullivan decl. ¶ 7.)

Additionally, the parties resolved several discovery disputes through, *inter alia*, the dissemination of a *Pioneer* Notice to putative class members and productions of redacted samplings of putative class members' time and wage records, along with numerous computer records related to Ms. SELK's claims for uncompensated work time. (Sullivan decl. ¶ 8.)

Defendant has also produced over 23,400 pages of documents, including employee manuals and hospital-wide guidelines, Ms. SELK's time and wage records, and the time and wage records of the opt-in plaintiffs. (Sullivan decl. ¶ 9.)

Therefore, the issues and class size have been narrowed to such a degree that both Parties are able to assess their likelihood of success at trial and value potential damages with some degree of confidence.

**D.    THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION**

Without entering into the Settlement Agreement, there existed a significant chance that Defendant would prevail on the merits of one or both of the remaining claims, and that Parties Plaintiff would receive nothing. There is also the possibility that Defendant would

1   successfully decertify the two classes. However, through the Settlement Agreement, Parties
2   Plaintiff receive guaranteed cash.

3       If the litigation were to proceed to trial in lieu of settlement, additional and
4   substantial attorneys fees and costs, and expert witnesses fees, would quickly accumulate.
5   (Sullivan decl. ¶ 11.)  It is also likely that these fees and costs would eclipse any potential
6   recovery for Parties Plaintiff, given the limited nature of the remaining claims. (*Id*.)

7   **E.      THE EXPERIENCE AND VIEWS OF COUNSEL**

8       Counsel for Parties Plaintiff has considerable experience in wage and hour and class
9   action litigation.  William Sullivan has over 20 years of experience, 18 years of which has
10  been devoted to both prosecuting and defending class action litigation. (Sullivan decl. ¶ 3.)

11      Here, counsel finds the *minimum* payment of $150.00 to Parties Plaintiff to be fair
12  and reasonable based on damages calculations and the risk of a defense verdict at trial.
13  (Sullivan decl. ¶ 14.)  Additionally, counsel finds the scope of the Released Claims for the
14  Parties Plaintiff to be fair and reasonable, as they are limited to wage and hour matters. (*Id*.
15  at 15.)

16      Although counsel for Parties Plaintiff were focused on ensuring that Plaintiff and
17  class members were compensated for the wage and hour violations at issue, Defendant
18  required a full release of all claims from Plaintiff to fully resolve this case. (Sullivan decl.
19  ¶ 16.) Specifically, Plaintiff may have potential retaliation, discrimination, harassment, and
20  workers compensation claims which are outside the scope of this litigation. (*Id*.)  Thus, to
21  fully "buy its peace," Defendant required a full, and **separate**, release of all potential
22  claims Plaintiff may have sought outside of this litigation. (*Id*.)  The terms of Plaintiff's
23  individual settlement agreement reflect this compromise and contain a full Civil Code
24  section 1542 release which is **not** present in the other Parties Plaintiffs' releases. (Please
25  see Exhibit 6 to the Settlement Agreement.)

26      Counsel for Parties Plaintiff considers the Settlement Agreement to represent a fair,
27  adequate and reasonable settlement that is well within the accepted range of recoveries for
28  similar class actions. Counsel further believes the Stipulation is in the best interests of the

1   Parties Plaintiff.  (Sullivan decl. ¶ 17.)

2   ## VI.  PLAINTIFF'S ENHANCEMENT AWARD IS APPROPRIATE

3          Courts in FLSA cases routinely award enhancement fees where, as here, the named

4   plaintiff has been actively involved in the litigation and has achieved a favorable result for

5   class members. *See Barcia v. Contain-A-Way, Inc.*, No. 07CV938-IEG-JMA, 2009 WL

6   587844, at *7 (S.D. Cal. Mar. 6, 2009) ("The payment of service awards to successful class

7   representatives is appropriate and the amounts of $25,000 are well within the currently

8   accepted ranged"); *see also Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294,

9   299–300 (N.D.Cal.1995) (incentive award of $50,000).

10         Here, Ms. SELK has dedicated significant time and energy in the service of this

11  lawsuit. (Sullivan decl. ¶ 18.)   To wit, she has met with her counsel in person

12  approximately 11 times and telephonically at least 35 times.  (*Id.* at 19.)  She also sat for

13  her deposition, aided in the discovery process, and was consistently available to answer

14  questions from her counsel. (*Id.*)

15         Additionally, Ms. SELK's willingness to bring this suit has resulted in monetary

16  benefits to the 65 individuals who opted in to this matter.  Therefore, the Parties contend

17  an enhancement award of $5,000.00 is appropriate in this matter.

18  ## VII.  PLAINTIFFS' REQUEST FOR FEES AND COSTS IS APPROPRIATE

19  **A.    PLAINTIFFS ARE ENTITLED TO RECOVER REASONABLE FEES AND COSTS**

20         Section 216(b) of the FLSA provides that, where an employee prevails in an action

21  for back wages, "the court in such action shall, in addition to any judgment awarded to the

22  plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and

23  costs of the action." 29 U.S.C. 216(b). The Supreme Court and district courts within the

24  Ninth Circuit have interpreted this provision to mean that attorneys' fees under FLSA are

25  mandatory. *See Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261, fn. 34 (1975);

26  *see also Yue Zhou v. Wang's Restaurant*, No. C 05-0279 PVT, 2007 WL 2298046, 1

27  (N.D.Cal. Aug. 8, 2007) ("Because a court supervised settlement of FLSA overtime claims

28

1  is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is
2  mandatory").

3      Prevailing party status is a "statutory threshold" which must be crossed before there
4  is any consideration of a fee award. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
5  489 U.S. 782, 789 (1989). This threshold is crossed when the parties enter into a settlement
6  the terms of which can be enforced by the district court. *P.N. v. Seattle School Dist. No. 1*,
7  474 F.3d 1165, 1172 (9th Cir. 2007); *citing Barrios v. California Interscholastic*
8  *Federation*, 277 F.3d 1128, 1135 (9th Cir. 2002). The touchstone of the prevailing party
9  inquiry is the "'material alteration of the legal relationship of the parties,' and 'that
10 alteration must be judicially sanctioned." *P.N. v. Seattle School Dist. No. 1*, 474 F.3d 1165,
11 1172-3 (9th Cir. 2007); *quoting Buckhannon Bd. and Care Home, Inc. v. West Virginia*
12 *Dept. of Health and Human Resources*, 532 U.S. 598, 604-05 (2001). "[A] litigant can
13 'prevail' for the purpose of awarding attorney's fees as a result of judicial action other than
14 a judgment on the merits or a consent decree (*provided that such action has sufficient*
15 *"judicial imprimatur"*)." *P.N. v. Seattle School Dist. No. 1*, 474 F.3d 1165, 1173 (9th Cir.
16 2007); (emphasis in original). The Court's authority to enforce the settlement is sufficient
17 judicial imprimatur. *Id.; Barrios v. California Interscholastic Federation*, 277 F.3d 1128,
18 1134 (9th Cir. 2002).

19 **B.    THE LODESTAR APPROACH SHOULD BE USED TO DETERMINE FEES**

20     Courts in this Circuit apply the lodestar method to determine what constitutes a
21 reasonable attorney's fee under federal fee shifting statutes. *See Costa v. Commissioner of*
22 *Social Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012). The lodestar is calculated by
23 multiplying a reasonable hourly rate for the work performed by the number of hours
24 reasonably expended on the litigation. *Id*.

25     As an initial matter counsel for Parties Plaintiff will only recover a fraction of the
26 fees and costs incurred in prosecuting this matter. (Sullivan decl. ¶ 20.) The requested fees
27 and costs represent counsels' efforts to resolve this matter on behalf of Parties Plaintiff.
28 (*Id*.)

## C.   PLAINTIFFS' REQUEST FOR FEES AND COSTS IS REASONABLE

As set forth in the attached Declaration of William B. Sullivan, the attorneys' fees and costs incurred (to date) are estimated to amount to approximately **$157,578.00** (One Hundred Fifty-Seven Thousand, Five Hundred Seventy-Eight Dollars). (Sullivan decl. ¶ 21.) However, counsel for Parties Plaintiff are only seeking **$22,000.00** in fees and costs as a means of resolving this matter. Attorneys' fees and costs are broken down as follows:

Mr. Sullivan served as supervising attorney and trial counsel, per the specific request of Ms. SELK. (Sullivan decl. ¶ 21(a).)  The billing rate for Mr. William Sullivan is $600.00 per hour. (*Id*.) Courts have routinely approved this rate for Mr. Sullivan's work. (*Id*.)

Clint Engleson was the primary associate attorney assigned to the case. (Sullivan decl. ¶ 21(b).)  Mr. Engleson's billing rate on this matter is $360.00 per hour. (*Id*.) One other associate attorney also expended significant time on this case. (*Id*.) Courts have routinely approved this rate for the associate attorneys' work. (*Id*.)

Mr. Sullivan spent the majority of his time on this case in a supervisory role, overseeing and approving the work performed by the associate attorneys. (Sullivan decl. ¶ 21(c).) Per his practice, Mr. Sullivan did not bill for his time spent in a supervisory manner, but only billed for court appearances, such as oral arguments. Mr. William Sullivan has currently billed approximately 11 hours in the service of this action. (*Id*.)  11 hours multiplied by $600.00 equals $6,600.00 (Six Thousand, Six Hundred Dollars). (*Id*.)

The associate attorneys at the Sullivan Law Group have currently expended approximately 391 hours in the service of this action. (Sullivan decl. ¶ 21(d).) 391 hours multiplied by $360.00 equals $140,760.00 (One Hundred Forty Thousand, Seven Hundred Sixty Dollars). (*Id*.)  The work performed by the associate attorneys consisted of, for the most part, discovery creation and review, the preparation of "meet and confer" letters and other contact with defense counsel, most motion work, and analysis of employment records to determine "commonality" and damages. (*Id*.) The associate attorneys also expended significant pre-filing time investigating the "rounding" claims at issue, which are novel. (*Id*.)  During this time, the associate attorneys also investigated Defendant, its business

- 16 -                          13-CV-00244-BAS-BGS

practices, and any variations in Class Members' job duties and rates of pay. (*Id.*)

To date, counsel for Parties Plaintiff have expended over $10,218.00 (Ten Thousand, Two Hundred Eighteen Dollars) in costs, including filing fees, third party administration fees (notices to potential class members), expert fees, deposition costs, copying and document preparation charges, investigative costs, and delivery fees. (Sullivan decl. ¶ 21(e).)

Thus, pursuant to the lodestar method, Parties Plaintiffs' request for fees and costs of $22,000.00 is eminently reasonable, as they will not recover some $135,578.00 in accrued fees and costs.

## VIII.  CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that the Court grant her Motion for Approval of (1) FLSA Settlement; (2) Attorneys' Fees and Costs; and (3) Enhancement Award.


Dated: July 14, 2015                    **SULLIVAN LAW GROUP, APC**


                                        */s/ William B. Sullivan*
                                        William B. Sullivan
                                        Eric K. Yaeckel
                                        Clint S. Engleson
                                        Attorneys for Plaintiff ELENA SELK,
                                        individually and on behalf of other
                                        members of the general public similarly
                                        situated