1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELENA SELK,<br><br>                              Plaintiff,<br><br>       v.<br><br>PIONEERS MEMORIAL<br>HEALTHCARE DISTRICT,<br><br>                              Defendant. | Case No. 13-cv-244-BAS-BGS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF FLSA SETTLEMENT** |

21
22
23
24
25
26
27
28

Plaintiff Elena Selk brings this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, on behalf of nonexempt employees of Defendant Pioneers Memorial Healthcare District ("Pioneers"). (ECF Nos. 1, 48.) Selk represents a class of current and former hourly employees of Pioneers who worked overtime during the relevant period, and a class of current and formerly hourly employees of Pioneers who used an employee cafeteria discount while working overtime. (ECF Nos. 48, 96, 102.) The parties are presently before the Court on Plaintiff Selk's unopposed Motion for Approval of Settlement. (ECF No. 125.)

The motion came on for hearing on January 13, 2016. (ECF No. 129.) Having considered the papers and the representations of counsel at oral argument, the Court **GRANTS** the motion.

## I.        BACKGROUND

Plaintiff Selk originally filed this action on January 31, 2013, alleging that her former employer, Defendant Pioneers, failed to pay her and other similarly situated workers proper wages and overtime in violation of the FLSA and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. (ECF No. 1.) On April 22, 2014, after Selk had filed a Second Amended Complaint that retained both the FLSA and UCL claims, the Court granted Pioneers' motion for partial summary judgment on Selk's UCL claim, leaving only claims under the FLSA. (ECF No. 96.)

Plaintiff's core allegations are as follows: (1) that Pioneers' policy of rounding employees' "clock in" and "clock out" times to the nearest 15 minutes systematically undercompensated its employees, denying them properly calculated regular and overtime pay; (2) that Pioneers' policy of excluding the 10% cafeteria meal discount it offers to employees from the value of total remuneration used to calculate employees' regular rate of pay denied employees proper wages and overtime; and (3) that Pioneers' practice of not accounting for the time employees worked while logged into computer systems other than Pioneers' primary time record system denied employees compensation for all hours actually worked. (SAC 7–11.) On January 8, 2014, Selk sought certification of three classes under Federal Rule of Civil Procedure 23, centered on the aforementioned claims, or in the alternative, certification of three collective action classes under the FLSA. (ECF No. 59.) The Court ultimately certified two classes under the FLSA: an "Overtime Class" based on Pioneers' time clock rounding policy and practices, and a "Cafeteria Discount Class" based on Selk's claim that the law requires Pioneers to include the 10% cafeteria discount when determining the total remuneration used to calculate employees' regular rate of pay. (ECF Nos. 96, 102.) After certification, Selk disseminated notice to 1,065

putative class members, 65 of whom opted-in to one or both of the "rounding" and "cafeteria discount" claims.[1] (ECF No. 113.) The FLSA consent forms signed by the opt-in plaintiffs were lodged with the Court on December 1, 2014. *Id.*

On March 23, 2015, while in the midst of one of their several discovery disputes, the parties filed a notice of settlement. (ECF No. 121.) Plaintiff's Motion for Approval of Settlement followed on July 14, 2015. (ECF No. 125.) The motion seeks approval of: (1) a settlement of all FLSA claims, (2) an award of attorney's fees and costs, (3) an enhancement award to Plaintiff Selk as the named plaintiff, and (4) a separate settlement between Selk and Pioneers, including a general release of claims for which Selk is to be independently compensated. (Mot. 1:2–7.)

The settlement ("Settlement" or "Settlement Agreement") provides that Pioneers will pay an amount not to exceed $50,000 to settle the claims of the 65 opt-in plaintiffs and Plaintiff Selk (collectively, the "Parties Plaintiff"). (ECF No. 127, Exh. A ("Settlement Agreement") ¶ C.) The $50,000 settlement fund is to be apportioned as follows: the Parties Plaintiff will receive individual settlement payments totaling $17,500; Plaintiff Selk will receive a $5,000 service payment; counsel for Parties Plaintiff will receive $22,000 in attorney's fees and costs; and Plaintiff Selk will receive a separate payment of $5,500 in consideration for signing a "full and complete" settlement agreement with Pioneers that includes a general release of claims. (Mot. 4:12–6:15.) The amount of each opt-in plaintiff's individual payment varies based upon an agreed upon-formula and the amount of weeks worked during the covered time period, but in no case will an opt-in plaintiff receive less than $150.[2] (Sullivan Decl., Exh. 3.)

The Settlement requires the Parties Plaintiff to release a defined category of claims. Specifically, the Settlement requires opt-in members to release "any and all

---

[1] Membership in the Rounding/Overtime Class and the Cafeteria Discount Class is largely coextensive—only 8 members of the latter are not members of the former. (Sullivan Decl. Exh. 4.)
[2] Individual settlement payments to the Parties Plaintiff range from $150 to $462.17. (ECF No. 127, Exh. 5.)

claims . . . for or which relate to the alleged failure to properly pay wages or overtime as required by the Fair Labor Standards Act, any state wage laws, any local wage laws, any other applicable federal, state or local law, and any other claims alleged in the case[.]" (Settlement Agreement ¶ B(10).) Selk's separate agreement with Pioneers (the "Selk Agreement") contains a general release of claims that covers not only the wage and hour claims alleged in the case, but also "any and all claims . . . whether known or unknown to Selk . . . (1) arising out of Selk's employment with Pioneers or termination of that employment . . . or (2) arising out of or in any way connected with any claim . . . resulting from any act or omission by or on part of" Pioneers, its officers, or affiliates. (ECF No. 127, Exh. 6 ¶ 5.) The release of claims in both agreements is to become effective upon the Court's approval of the Settlement and dismissal of this action. (Settlement Agreement ¶ K; Selk Agreement ¶ 13.)

## II.  LEGAL STANDARD

The FLSA was enacted to protect covered workers from substandard wages and oppressive working hours. *See Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a) (characterizing substandard wages as a labor condition that undermines "the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers"). To advance this policy objective, the Act requires employers to pay their employees no less than a specified minimum wage for work performed, 29 U.S.C. § 206, and at least one and one-half times an employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207(a)(1). Under the FLSA, an employer who violates Section 206 or 207 is liable to the employees affected for the amount of unpaid minimum wages or overtime compensation, and for an additional equal amount as liquidated damages. *See* 29 U.S.C. § 216(b).

"The FLSA places strict limits on an employee's ability to waive claims for unpaid wages or overtime . . . for fear that employers may coerce employees into settlement and waiver." *Lopez v. Nights of Cabiria, LLC*, 96 F.Supp.3d 170, 175

(S.D.N.Y. 2015) (internal quotation marks and citation omitted); *see Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) (finding that the FLSA prohibits waiver of the statutory minimum wage and right to liquidated damages as a check against the superior bargaining power employers generally enjoy vis-à-vis employees). Accordingly, claims for unpaid wages under the FLSA may only be waived or otherwise settled if settlement is supervised by the Secretary of Labor or approved by a district court. *See Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dept. of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Meza v. 317 Amsterdam Corp.*, 14-CV-9007 (VSB), 2015 WL 9161791, *1 (S.D.N.Y. Dec. 14, 2015) ("Parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor.") (citation omitted).

In reviewing a FLSA settlement, a district court must determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355. A bona fide dispute exists when there are legitimate questions about "the existence and extent of Defendant's FLSA liability." *Ambrosino v. Home Depot. U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 1671489, (S.D. Cal. Apr. 28, 2014). There must be "some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Collins v. Sanderson Farms*, 568 F.Supp.2d 714, 719–20 (E.D. La. 2008); *see also Mamani v. Licetti*, No. 13–CV–7002 (KMW) (JCF), 2014 WL 2971050, *2 (S.D.N.Y. July 2, 2014) (explaining that to demonstrate a bona fide dispute under the FLSA "[t]he employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages") (internal citation omitted). If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute. *See Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, 41

(E.D.N.Y. 2014) (Without judicial oversight . . . employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with [FLSA].")); *Hogan v. Allstate Beverage Co., Inc.*, 821 F.Supp.2d 1274, 1282 (M.D. Ala. 2011) ("Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA.").

After a district court is satisfied that a bona fide dispute exists, it must then determine whether the settlement is fair and reasonable. In making this determination, many courts begin with the well-established criteria for assessing whether a class action settlement is "fair, reasonable, adequate" under Fed. R. Civ. P. 23(e), and reason by analogy to the FLSA context. *See, e.g.*, *Otey v. CrowdFlower, Inc.*, No. 12–cv–05524–JST, 2015 WL 4076620, (N.D. Cal. July 2, 2015) ("To determine whether a settlement is fair and reasonable [under the FLSA], district courts implicitly or explicitly consider the factors that are used to evaluate Rule 23 class action settlements[.]"). This approach is generally sound, but runs the risk of not giving due weight to the policy purposes behind the FLSA.[3] *See Goudie v. Cable Commc'ns, Inc.*, No. CV 08–507–AC, 2009 WL 88336, *1 (D. Or. Jan. 12, 2009) ("In reviewing a private FLSA settlement, the court's obligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes."); *Sanderson Farms*, 568 F.Supp.2d at 717 ("The Court's role [in reviewing a FLSA settlement] is in many ways comparable to, but in others quite distinguishable from, that of a court in a settlement of a class action brought pursuant

---

[3] However, it is also the case that FLSA collective actions do not implicate the same due process concerns as class actions brought under Rule 23 because an employee who wishes to join in a FLSA collective action must affirmatively "opt-in" by filing a written consent to join the suit before she can be bound by the outcome. *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 906 n. 9 (9th Cir. 2004).

to [Rule 23], and derives from the special character of the substantive labor rights involved."). To mitigate this risk, many courts have adopted a totality of circumstances approach that emphasizes the context of the case and the unique importance of the substantive labor rights involved. *See generally Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012). This approach replicates the factors relevant to Rule 23 class actions where appropriate, but adjusts or departs from those factors when necessary to account for the labor rights at issue. This Court adopts a variation of the totality of circumstances approach here.

After reviewing the relevant case law, and having considered the history and policy of the FLSA, the Court finds that the following factors should be considered when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See generally Sarceno v. Choi*, 78 F.Supp.3d 446, (D.D.C. 2015); *Daniels v. Aeropostale West, Inc.*, No. C 12–05755 WHA, 2014 WL 2215708, (N.D. Cal. May 29, 2014); *Ambrosino*, 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014); *Luo v. Zynga, Inc.*, No. 13–cv–00186 NC, 2014 WL 457742, (N.D. Cal. Jan. 31, 2014); *Lewis v. Vision Value, LLC*, No. 1:11–cv–01055–LJO–BAM, 2012 WL 2930867, (E.D. Cal. July 18, 2012); *Wolinsky*, 900 F.Supp.2d 332 (S.D.N.Y. 2012); *Sanderson Farms*, 568 F.Supp.2d 714 (E.D. La. 2008). In considering these factors under a totality of the circumstances approach, a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA. *See, e.g., Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1247 (M.D. Fla. 2010) ("[T]he district court should not become complicit in any scheme or mechanism designed to confine or frustrate . . . realization of FLSA rights."). If after considering these factors the court determines that "the settlement reflects a

reasonable compromise over issues that are actually in dispute," then "the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C. 10–5243 SBA, 2012 WL 6629608, *2 (N.D. Cal. Dec. 19, 2012) (quoting in part *Lynn's Food Stores*, 679 F.2d at 1354).

## III.   DISCUSSION

### A.   Bona Fide Dispute

The Court finds that this case reflects a bona fide dispute between the parties over potential liability under the FLSA. As the briefing papers make clear, the parties dispute whether Pioneers' rounding practices—including rounding employees' reported work time to the nearest quarter hour and rounding without taking into account differences in overtime rates of pay versus regular rates of pay— undercompensates employees in violation of the FLSA. (Mot. 10:13–11:24.) These issues raise legitimate questions over whether Pioneers may be liable under the statute, particularly given the unsettled nature of the law on the question of when a neutral rounding policy may produce consequences that implicate the FLSA. *Id.* The parties also proffer different, non-frivolous readings of case law and federal regulations on the question of whether Pioneers is required to include the 10% cafeteria discount into the calculation for employees' regular rate of pay. (Pl.'s Mot. for Class Cert. 15, 16; Def.'s Opp'n 18, 19.) Thus, the cafeteria discount claim also raises legitimate questions about the "existence and extent of Defendant's FLSA liability." *Ambrosino*, 2014 WL 1671489, at *1. In light of these contending views on issues central to the case, and the fact that Parties Plaintiff are not clearly entitled to the compensation they seek, the Court is convinced that that this case involves a bona fide dispute between the parties.

### B.   Fair and Reasonable

After considering the six factors under the totality of circumstances approach outlined above, the Court finds the Settlement Agreement to be fair and reasonable

1    under the FLSA.

2        **1.  Plaintiff's Range of Possible Recovery**

3        A district court evaluates the plaintiff's range of potential recovery to ensure

4    that the settlement amount agreed to bears some reasonable relationship to the true

5    settlement value of the claims. *See, e.g.*, *Daniels*, 2014 WL 2215708, at *4 ("To

6    protect the absent opt-in members, it is critical to know the total triable amount so

7    that the judge can evaluate the fairness and reasonableness of the proposed

8    settlement."). The settlement amount need not represent a specific percentage of the

9    maximum possible recovery. *See Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*,

10   221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed

11   settlement may be acceptable even though it amounts to only a fraction of the

12   potential recovery that might be available to the class members at trial.") (collecting

13   cases). But in comparing the amount proposed in the settlement with the amount that

14   plaintiffs could have obtained at trial, the court must be satisfied that the amount left

15   on the settlement table is fair and reasonable under the circumstances presented. *See*

16   *Daniels*, 2014 WL 2215708, at *4; *see also Lewis*, 2012 WL 2930867, at *2

17   (considering among other things whether the proposed settlement amount is

18   proportionate to the damages plaintiffs could have obtained if they proceeded to

19   trial).

20       At oral argument, counsel for Parties Plaintiff represented that the $17,500

21   sought on behalf of the opt-in members is "fairly close" to what Plaintiffs would have

22   asked for in damages if the case went to trial. Counsel stressed that once Plaintiff's

23   state law claim was dismissed, and once discovery suggested a lack of bad intent on

24   the part of Pioneers, the scope of potential recovery narrowed considerably because

25   Parties Plaintiff would be unlikely to receive liquidated damages based on the

26   evidence. *See* 29 U.S.C. § 260 ("[I]f the employer shows to the satisfaction of the

27   court that the act or omission giving rise to such action was in good faith and that he

28   had reasonable grounds for believing that his act or omission was not a violation of

1    the [FLSA], the court may . . . award no liquidated damages[.]").

2        After reviewing the record, and crediting counsel's representations, it appears

3    that the total settlement fund of $50,000 represents between 26% to 50% of the best

4    possible recovery. The 26% lower bound is reached by dividing the total settlement

5    fund of $50,000 by the total of all (1) claimed back wages ($17,500) plus (2) an equal

6    amount in liquidated damages ($17,500) plus (3) $157,578 in attorney's fees and

7    costs. In setting a 50% upper bound, the Court considered the $17,500 that would go

8    to opt-in Plaintiffs under the Settlement Agreement, and divided this figure by the

9    $37,500 ($17,500 in back wages plus $17,500 in liquidated damages) that opt-in

10   members would receive if awarded liquidated damages. Having made these

11   admittedly rough calculations, the Court finds the Settlement to be in the range of

12   reasonableness for wage and hour actions. *See Bellinghausen v. Tractor Supply Co.*,

13   306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair

14   where the settlement fund represented between 9% and 27% of the total potential

15   recovery); *Jones v. Agilysys, Inc.*, No: C 12–03516 SBA, 2014 WL 2090034, (N.D.

16   Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60%

17   of recoverable damages to be a "tangible monetary benefit" for the class members);

18   *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010)

19   (settlement fund within range of reasonableness when it represented approximately

20   13% to 17% of the maximum possible recovery); *Knight v. Red Door Salons, Inc.*,

21   No. 08–01520 SC, 2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009) (recovery of 50%

22   of possible damages in a wage and hour action was "substantial achievement on

23   behalf of the class"). In finding the settlement amount fair and reasonable, the Court

24   also stresses the possibility that plaintiffs would recover nothing. Thus, although the

25   payouts to individual plaintiffs are small, the certainty of recovery helps prevent the

26   additional damage that would befall plaintiffs if the case proceeds and is ultimately

27   resolved against them. *See, e.g.*, *Glass v. UBS Fin. Serv., Inc.*, No. C–06–4068, 2007

28   WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd 331 F.App'x 452 (9th Cir. 2009)

1  (finding a wage and hour settlement in the range of 25 to 35% of claimed damages
2  fair and reasonable in light of the uncertainties involved in the litigation).

3  **2.  The Seriousness of the Litigation Risks**

4  The seriousness of the litigation risks also weighs in favor of approval. Plaintiff
5  alleges that Pioneers' rounding practice has denied class members fair compensation
6  under the FLSA, but as the parties acknowledge, an employer's rounding is not *per*
7  *se* illegal and Plaintiff's success on this claim at trial is far from assured. (Mot. 10,
8  11.) Similarly, although Plaintiff believes her cafeteria discount claim has merit,
9  there is a strong argument, supported by statute and case law, that Pioneers has no
10 legal obligation to factor in the cafeteria discount to calculate employees' regular rate
11 of pay. (Def.'s Answer 15:6–11; Mot. 11:16–24.) Finally, there is a real possibility
12 that Defendant would successfully decertify one or both of the classes. (Mot. 12:28–
13 13:2.) In light of this substantial uncertainty, "there is a significant risk that litigation
14 might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen*,
15 306 F.R.D. at 255. Accordingly, this factor weighs in favor of approving the
16 Settlement. *See, e.g.*, *Chavarria v. New York Airport Serv., LLC*, 875 F.Supp.2d 164,
17 173 (E.D.N.Y. 2012) (litigation risks favored finding the settlement fair and
18 reasonable where "the settlement provide[d] certain compensation to the class
19 members now rather than awaiting an eventual resolution that would result in further
20 expense without any definite benefit"); *Glass*, 2007 WL 221862, at *3–4 (seriousness
21 of the litigation risks supported approval of settlement where substantial uncertainty
22 in the law meant any ruling by the court would have led to further expense, delay and
23 uncertainty of litigating an appeal).

24 **3.  Experience and Views of Counsel and Opinions of Participating**
25 **Plaintiffs**

26 Counsel for Parties Plaintiff has almost two decades of experience prosecuting
27 and defending class action litigation, including substantial experience as lead counsel
28 on wage and hour claims. (Sullivan Decl. ¶ 3.) Pioneers is likewise represented by

experienced litigators. Here, Plaintiff's counsel asserts that the individual settlement amounts, including the $150.00 minimum payment, are fair and reasonable "based on damages calculations and the risk of a defense verdict at trial." (Mot. 13:11–13.) Counsel also finds the scope of the release provisions in both the Settlement and the Selk Agreement to be fair and reasonable as the former is "limited to wage and hour matters" (Mot. 13:13–15) and the latter is based on separate compensation to Selk (Mot. 13:16–25).

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11–cv–05188–WHO, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014). As the Ninth Circuit has emphasized, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *see also Bellinghausen*, 306 F.R.D. at 257 (N.D. Cal. 2015) ("Given counsel's experience in [wage and hour litigation], his assertion that the settlement is fair, adequate, and reasonable support [sic] final approval of the settlement."). Here, there is nothing in the record that calls into question the experience of counsel or raises doubt about counsel's judgment. As such, this factor weighs in favor of approval.

The opinions of participating plaintiffs in this case eludes definitive determination. The opt-in members were not given information on the Settlement prior to joining the suit, nor has Plaintiff's counsel formally notified the class members since the parties reached an agreement. Plaintiff's counsel noted at oral argument that approximately two-thirds of the class is aware that a settlement has been reached and that the more active members of the class are aware of the actual settlement terms. Counsel further represented that out of the plaintiffs who are aware of the Settlement, none has objected.

Although the Court has some concerns that not all of the 65 opt-in plaintiffs received formal notification of the settlement terms before the parties moved for approval, the lack of objections by the active members of the class weighs in favor of finding the Settlement fair and reasonable. *See, e.g.*, *DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (citing cases). The Court notes also that the due process implications of a lack of formal notification post-settlement are less worrisome given that the opt-in plaintiffs had to affirmatively consent in writing to join the suit. *See Ballaris*, 370 F.3d at 906 n. 9. Furthermore, when the Settlement is considered in its totality, the fact that not every member of the class received notice of the settlement terms does not, in this case, undermine the overall fairness and reasonableness of the Settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety.") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quotation marks omitted)). Thus, the Court finds that the lack of formal notice to each opt-in member does not weigh against approval.

### 4.  Stage of Proceedings and Extent of Discovery Completed

The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (N.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution."). So long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Mego*

*Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (explaining that a combination of investigation, discovery, and research conducted prior to settlement can provide sufficient information for class counsel to make an informed decision about settlement).

Here, the parties have engaged in meaningful discovery. Plaintiff Selk and Pioneers each propounded eight sets of written discovery on the other. (Sullivan Decl. ¶ 6.) Plaintiff Selk deposed Pioneers' person most knowledgeable on employee compensation, and Pioneers deposed both Plaintiff Selk and Selk's expert, Dr. Robert Fountain. (*Id.* at ¶¶ 6, 7.) Defendant has produced more than 23,000 pages of documents, including employee manuals, policy documents, and time and wage records for Plaintiff Selk and the opt-in members. (*Id.* at ¶ 9.) Plaintiff's counsel has closely analyzed the time and wage records of each of the class members and calculated the amount of alleged unpaid wages accordingly. From this investigation, the parties have been able to narrow the issues in the case and adequately assess the likelihood of success at trial. *See, e.g.*, *Rodriguez*, 563 F.3d at 967 (finding that a district court could find that counsel had a good grasp on the merits of the case before settlement where "[e]xtensive discovery had been conducted, and the parties had gone through one round of summary judgment proceedings"). Accordingly, the Court finds that the parties had sufficient information to make an informed decision about settlement. The extent of discovery and the stage of proceedings thus favors approval. *See Ching v. Siemens Industry, Inc.*, No. 11–cv–04838–MEJ, 2014 WL 2926210, *5 (N.D. Cal. Jun. 27, 2014) (extent of discovery weighed in favor of approving a settlement where class counsel "conducted interviews, propounded extensive written discovery, discussed the case with opposing counsel, analyzed thousands of pages of documents, deposed Defendants' person most knowledgeable, analyzed damages, reviewed time and pay records and policy documents, and collected evidence").

**5.  Scope of Release Provision**

Courts review the scope of any release provision in a FLSA settlement to

ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation. *See Luo*, 2014 WL 457742, at *3. The concern is that an expansive release of claims would effectively allow employers to use employee wages—wages that are guaranteed by statute—as a bargaining chip to extract valuable concessions from employees. *See Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are especially skeptical of release provisions that require employees to forfeit claims designed to advance public values through private litigation, such as claims for discrimination under Title VII of the Civil Rights Act of 1964. *See, e.g.*, *Lopez v. Nights of Cabiria,* LLC, 96 F.Supp.3d 170, 181 (S.D.N.Y. 2015); *McKeen-Chaplin*, 2012 WL 6629608, at *4; *Cf.* Owen Fiss, Against Settlement, 93 Yale L.J. 1073, 1085 (1984) (arguing that settlement may present an obstacle to justice because it deprives courts of their duty "to explicate and give force to the values embodied in authoritative texts such as the Constitution and statutes"). Thus, when a FLSA settlement provides that opt-in members will receive unpaid wages and related damages, but nothing more, a release provision should be limited to the wage and hour claims at issue. *See Moreno*, 729 F.Supp.2d at 1352 ("[A] pervasive release in a FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer."). Only when opt-in plaintiffs receive independent compensation, or provide specific evidence that they fully understand the breadth of the release, will a broad release of claims survive a presumption of unfairness. *See Ambrosino*, 2014 WL 1671489, at *3; *Hogan*, 821 F.Supp.2d at 1284. Otherwise, a gap between the allegations brought in the case and the claims released in a settlement agreement will militate against finding the settlement fair and reasonable. *See Daniels*, 2014 WL 2215708, at *4 (finding a proposed release overbroad where counsel was authorized to settle only the conditionally-certified FLSA claim, but the proposed release went beyond the FLSA

claim); *McKeen-Chaplin*, 2012 WL 6629608, at *5 (rejecting FLSA settlement in part because release provision went beyond the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

Here, the Settlement requires the Parties Plaintiff to release "any and all claims . . . for or which relate to the alleged failure to properly pay wages or overtime as required by the Fair Labor Standards Act, any state wage laws, any local wage laws, any other applicable federal, state, or local law, and any other claims alleged in the case." (Settlement Agreement ¶ B(10).) Unlike release provisions that courts have found to be overly broad, *see, e.g.*, *Garcia v. Jambox, Inc.*, No. 14–cv–3504 (MHD), 2015 WL 2359502, *4 (S.D.N.Y. Apr. 27, 2015); *Ambrosino*, 2014 WL 1671489, at *2–3, this release provision generally tracks the wage and hour claims asserted in the lawsuit. At oral argument, counsel for Pioneers represented to the Court that the release requires waiver of only the wage and hour claims alleged, and not unrelated claims. While the Court believes the language of the release could be more precise, the Court is satisfied that the release does not force class members to forfeit unrelated claims, or allow Pioneers to purchase a broad-based litigation shield in exchange for unpaid wages that class members are entitled to by statute. Thus, the scope of the release provision does not weigh against finding the Settlement fair and reasonable.

In her separate settlement agreement with Pioneers, Plaintiff Selk has agreed to a general release provision encompassing "any and all claims . . . whether known or unknown to Selk . . . (1) arising out of Selk's employment with Pioneers or termination of that employment . . . or arising out of or in any way connected with any claim . . . resulting from any act or omission by or on part of" Pioneers, its officers, or affiliates. (Selk Agreement, Exh. 6 ¶ 5.) The Selk Agreement further provides that Selk waives any right to recovery based on any state or federal anti-discrimination laws, including Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. *Id*. In exchange for this general release, Selk will receive a separate

1   release payment of $5,500. *Id*. at ¶ 4(a).

2       The Court finds that this release does not undermine the fairness of the

3   Settlement or the Selk Agreement. Although the release extends beyond the FLSA

4   claims at issue to include any claim Selk may have against Pioneers, the separate

5   release payment of $5,500 justifies the broad release. Courts are less skeptical of a

6   broad release of claims when the employee receives independent compensation from

7   the employer as consideration for the release. *See McKeen-Chaplin*, 2012 WL

8   6629608, at *5; *Hogan*, 821 F.Supp.2d at 1284; *Robertson v. Ther–Rx Corp.*, No.

9   2:09cv1010–MHT (WO), 2011 WL 1810193, (M.D. Ala. May 12, 2011). The broad

10  release is particularly defensible here given that Selk may have potential retaliation,

11  discrimination, harassment, and workers compensation claims that are outside the

12  scope of this litigation, (Sullivan Decl. ¶ 16.), and the separate payment is being

13  offered with these potential claims in mind. *See, e.g.*, *Gaspar v. Pers. Touch Moving,*

14  *Inc.*, 13-cv-8187 (AJN), 2015 WL 7871036, *2 (S.D.N.Y. Dec. 3, 2015) (finding a

15  broad release appropriate where the named plaintiff had non-FLSA claims that he did

16  not share with other plaintiffs and received a separate payment to relinquish those

17  claims). Under these circumstances, the Court does not find the general release of

18  claims in the Selk Agreement to be problematic.

19      **6. Possibility of Fraud or Collusion**

20      The Court finds no evidence that the Settlement resulted from, or was

21  influenced by, fraud or collusion. A key factor supporting this finding is that the

22  amount of the individual settlement payments to be received by opt-in members is

23  based on an analysis of employee time records and an estimate of the degree of under-

24  compensation during the relevant period. (Sullivan Decl. ¶ 13.) This approach guards

25  against the arbitrariness that might suggest collusion. For example, to determine the

26  amount due under the rounding claim, Plaintiff's counsel compared the actual

27  amount of time worked (as reflected in the "clock in," "clock-out" times listed in the

28  record) with the rounded time, and calculated an amount that compensates the opt-in

members for the difference. Similarly, to determine the amount due under the cafeteria discount claim, Plaintiff's counsel used individual employee time records to estimate how much each plaintiff lost in wages by not having the meal discount included in the calculation for the regular rate of pay. (Sullivan Decl. ¶¶ 9, 10, Exh. 3.) This is a reasonable approach to calculating potential damages based on relevant, objective documentation. In short, there is nothing on the face of the record to suggest Plaintiff's counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation." *In re Bluetooth Prod. Liab. Litig.*, 654 F.3d at 947. Nor does the Court find evidence of more "subtle signs" of collusion, such as "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id*. (quoting *Hanlon*, 150 F.3d at 1021). Counsel has asserted that settlement negotiations were at all times adversarial, (Mot. 10:4–6), and the record in this case—two years of litigation with extensive discovery, numerous depositions, multiple discovery disputes, and a motion for partial summary judgment—supports this assertion. Accordingly, the Court finds that the Settlement was the result of arm's-length negotiations and that no evidence of fraud or collusion exists.

### 7.  Conclusion Regarding Fairness and Reasonableness

Having considered the relevant factors and the representations of the parties, the Court concludes that the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute over FLSA coverage. *See Lynn's Food Stores*, 679 F.2d at 1355.

## C.    Attorney's Fees and Costs

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Wolinsky*, 900 F.Supp.2d at 336; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of

the action"). Where a settlement produces a common fund for the benefit of the entire class, courts may employ either the lodestar method or percentage-of-recovery method to determine a reasonable attorney's fee. *See In re Bluetooth*, 654 F.3d at 942. Here, the Settlement provides for a $50,000 common fund. Thus, this Court applies the percentage-of-recovery method, which typically involves calculating 25% of the fund as the "benchmark" for a reasonable fee award. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%.").

Plaintiff's counsel seek $11,782 in attorney's fees.[4] (Mot. 16, 17.) This figure constitutes approximately 24% of the total settlement fund of $50,000 and is thus within the benchmark set by the Ninth Circuit. The reasonableness of the fees requested is reinforced by the fact that the lodestar figure[5] ($147,360) is more than 11 times greater than the amount of fees that would be provided under a benchmark approach ($12,500). *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (noting that when applying the percentage-of-the-fund approach, the court may use the lodestar as a cross-check on the reasonableness of the fee request). Plaintiff's counsel also has provided adequate documentation supporting the fee request. (Sullivan Decl. ¶ 21.) Thus, the Court finds the fees requested to be reasonable and appropriate, and awards the amount requested.

Plaintiff's counsel also requests recovery of $10,218 in litigation costs, including filing fees, deposition costs, third party administration fees, and expert fees.

---

[4] Plaintiff's counsel does not request a specific amount in attorney's fees, but instead requests $22,000 *total* for attorney's fees and costs, and documents $10,218 in litigation costs. This, of course, leaves $11,782 in attorney's fees.

[5] "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Here, if the Court were to accept the hours and reasonable rate documented by counsel, the lodestar figure would be $147,360.

(Sullivan Decl. ¶ 21(e).) "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros*, 303 F.R.D. at 375 (citations omitted); *see also* 29 U.S.C. § 216(b). The Court finds that the amount requested in costs is reasonable under the circumstances and appropriately documented. The Court awards these costs as requested.

**D.    Incentive Award**

At its discretion, a district court may award an incentive payment to the named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class. *See Jones*, 2014 WL 2090034, at *3. In reviewing whether an incentive award is appropriate, the court should consider, among other things, "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Courts will scrutinize large incentive payments to ensure that the prospect of a large incentive did not encourage a named plaintiff "to accept [a] suboptimal settlement[] at the expense of the class members whose interests they are appointed to guard[.]" *Staton*, 327 F.3d at 977.

Plaintiff Selk seeks a $5,000 service payment "as compensation for bringing and prosecuting this action on behalf of herself and others[.]" (Mot. 6:8–9.) Plaintiff's counsel declares that Selk dedicated "significant time and energy" pursuing this ligation, including meeting with counsel in person 11 times and telephonically at least 35 times. (Sullivan Decl. ¶ 18.) Selk also was deposed, assisted counsel in the discovery process, and was consistently available to answer questions from counsel during the more than two years that transpired between the filing of this action and the notice of settlement. *Id.* at ¶ 19. Finally, Selk's decision to file suit and pursue this action resulted in substantial benefits on behalf of the class: as explained above,

1   a rough estimate suggests that the settlement amount represents between 26% to 50%

2   of recoverable damages. In light of this record, the Court finds, in its discretion, that

3   the requested incentive payment is reasonable and appropriate.

4   **IV.    CONCLUSION & ORDER**

5            The FLSA was designed "to extend the frontiers of social progress by insuring

6   to all our able-bodied men and women a fair day's pay for a fair day's work." *A.H.*

7   *Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (quoting Message of the President

8   to Congress, May 24, 1934). Consistent with this humanitarian ideal, the substantive

9   labor rights provided for in the statute—including the minimum wage and maximum

10  hour provisions—are afforded exceptionally strong protection. *See Brooklyn Sav.*

11  *Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945); *D.A. Schulte, Inc., v. Gangi*, 328 U.S.

12  108, 115–16 (1946); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008)

13  ("In service of the statute's remedial and humanitarian goals, the Supreme Court

14  consistently has interpreted the [FLSA] liberally and afforded its protections

15  exceptionally broad coverage."). Thus, when private parties submit to a court a

16  settlement purporting to resolve claims brought under the FLSA, the court must

17  scrutinize the settlement to ensure it represents a fair and reasonable resolution of a

18  bona fide dispute rather than a "mere waiver of statutory rights brought about by an

19  employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354. Here, after

20  evaluating the Settlement under the relevant standard, the Court finds it to be a fair

21  and reasonable resolution of a bona fide dispute over FLSA provisions. Accordingly,

22  the Court **GRANTS** Plaintiff's motion for approval of settlement.

23           The Court further **APPROVES** the payment of $11,782 in attorney's fees and

24  $10,218 in costs to class counsel, Sullivan Law Group, APC, and **APPROVES** an

25  incentive payment of $5,000 to named plaintiff, Elena Selk. The parties shall follow

26  the procedures for settlement administration as outlined in the Settlement Agreement.

27  (Mot. 6:22–8:16; Settlement Agreement ¶ H.)

28           Pursuant to the terms of the Settlement, the instant action is dismissed with

1    prejudice. The Clerk of Court shall close the file.

2        **IT IS SO ORDERED.**

3

4    **DATED:  January 29, 2016**

5                                                    **Hon. Cynthia Bashant**
                                                     **United States District Judge**